AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JHAPHRE HIGGS | ) | Case No. **8:19 MJ 1142 TGW** |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 23, 2018_____ in the county of _____Pinellas_____ in the _____Middle_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:

See affidavit attached

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Scott Boshek, Special Agent, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb. 4, 2019

_____
*Judge's signature*

THOMAS G. WILSON, U.S. MAGISTRATE JUDGE
_____
*Printed name and title*

City and state:        Tampa, Florida

## AFFIDAVIT

I, Scott Boshek, being duly sworn, state:

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been employed by ATF since February 2005. I have completed the Federal Law Enforcement Training Centers training course for Investigators and ATF's Special Agent Basic Training. During this training, I learned about federal firearm statutes as well as violations of the United States Code including violent crimes and narcotic offenses.

2.      I submit this affidavit in support of a criminal complaint charging Jhaphre Higgs (D.O.B. 01/25/1984) with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

3.      The statements in this affidavit are based on my personal knowledge, training, and experience, and/or reliable information relayed to me by other law enforcement officers or witnesses. Because of the limited purpose of this affidavit, I have not included each and every fact known to me, but only those facts that I believe are necessary to establish probable cause in support of the requested complaint.

4.      On or about November 23, 2018, at approximately 2:54am, the St. Petersburg Police Department received a 911 call regarding a threat of bodily harm at 4620 14th Avenue South, St. Petersburg, Florida.

5.    The caller, C.F.[1] reported that a woman was outside her residence with a firearm, threatening to shoot at her house.[2] Specifically, she reported: "There is a woman in a maroon Lexus and sitting outside of my house, threatening to shoot up my house and kill me and my children that are inside my house." At various points in the call, C.F. said, "She does have a gun I just saw it," "she has a gun and she just pointed it at my cousin," and "it looks like a handgun."[3]

6.    C.F. reported that the woman might direct others to shoot at C.F.'s house on the woman's behalf. Specifically, C.F. stated, "She has other people that will shoot the house up as well," and at another point C.F. stated, "now she's talking to three [derogatory curse word]s about about shooting up our house."

7.    When officers arrived, they parked several houses away from 4620 14th Avenue South, and approached the area on foot. The officers were equipped with a ballistic shield and an AR-15 rifle. They saw a fight between two women, later identified as C.F. and Tomeka Louis. Louis appeared intoxicated.

---

[1] In 2016, C.F. was charged with public aid fraud, a third degree felony. The case was resolved via pretrial diversion in 2017.

[2] The call was lengthy, and the quoted language is not intended to represent the full content of the call.

[3] A neighbor of C.F.'s also called 911 that evening, twice, reporting that a "loud mouth lady" was yelling outside and banging on her door, and that she wanted trespassing paperwork done. Police officers responded after the first call, after which time the neighbor reported that the woman (later identified as Tomeka Louis) had calmed down. After officers left, the neighbor called again and reported the woman had resumed her behavior.

8.      Officer Eric Sireni saw a Lexus approach where the women were arguing and saw Louis approach the vehicle and speak to its occupants for several minutes. Thereafter, the Lexus remained stationary in front of the residence. Then, when it appeared to Officer Sireni that the occupants of the vehicle noticed law enforcement officers approaching, the Lexus began to leave the area.

9.      Because the vehicle appeared to be associated with the reported dispute to which the officers had been called to respond, officers approached the vehicle for further investigation. They smelled a strong odor of marijuana emanating from the vehicle. Three men were inside it. The occupants were later identified as Santana Fisher (rear passenger seat), Jhaphre Higgs (front passenger seat), and James Higgs (driver).

10.     The officers saw the rear passenger, Fisher, bent down at his waist, reaching toward the floorboard by his feet, with his head bowed down and tucked. His arms were down, fully between his legs as though he was reaching under the seat. He was ordered to "sit up and show his hands," a command he ignored. As he continued to reach down, officers saw him shove an object into his left pant pocket in a manner that appeared to be meant to conceal something.

11.     Based on the totality of the circumstances, the officers removed all the occupants from the vehicle, detained them in handcuffs, and searched them.

12.     Neither Jhaphre Higgs nor James Higgs had any contraband on his person. Fisher had on his person 38 Dilaudid (Hydromorphone) pills and two small baggies of what field tested positive for cocaine.

13.    Officers interviewed persons on the scene. C.F. said, among other things, that Louis had threatened to kill C.F. and have people "shoot up" C.F.'s residence. C.F. stated that Louis was initially respectful when the parties first came in contact around 10:00pm but became more argumentative as she continued to drink.

14.    C.F. said she had called her male cousin to the house for protection. The cousin, Samuel Saunders, reported that he had also encountered Louis, as he arrived in the front of the residence, acting belligerently, and threatening to shoot C.F.'s house. Saunders further stated that, after the blue Lexus pulled up, he could hear Louis tell the occupants of the Lexus to "wet that house up!"

15.    Based on the totality of the circumstances, officers then searched the Lexus. During this search, an officer located a loose round of .380-caliber ammunition in plain view on the floorboard of the backseat. Under the front passenger seat, officers located and seized a Smith & Wesson Bodyguard, .380-caliber pistol, loaded with five rounds of ammunition.

16.    Officers searched Louis, who did not have a firearm on her person.

17.    ATF SA Jeff Burt, an interstate nexus expert, determined that the Smith & Wesson pistol was not made in the State of Florida. It would, therefore, have had to travel in interstate and/or foreign commerce prior to arriving in Florida.

18.    A crime scene technician responded to the scene to photograph and collect the evidence. The technician swabbed the firearm for the possible presence of

4

DNA evidence and obtained, with the men's consent, DNA buccal swabs from all three subjects.

19.     Both James Higgs and Jhaphre Higgs were released from the scene.

20.     Officers arrested Fisher for possession of cocaine and Dilaudid, aggravated assault, and being a felon in possession of a firearm and ammunition. The State Attorney's Office found that, "[b]ased on the facts and circumstances, successful prosecution is not likely," and did not pursue the case against him.

21.     Officers arrested Louis for disorderly intoxication. The State Attorney's Officer determined that "the facts and circumstances as presented do not warrant prosecution," and did not pursue the case against her.

22.     On or about January 16, 2019, the Pinellas County Forensics Laboratory provided its analysis of the DNA collected from the Smith & Wesson firearm. It reported that the DNA on the firearm was a mixture of DNA from at least three individuals. The minor contributors of DNA could not be conclusively determined and were not suitable for comparison purposes.

23.     However, the DNA from the major contributor matched the DNA of Jhaphre Higgs. The probability of selecting an unrelated, random individual who could be a major contributor to the DNA mixture located on the firearm was approximately 1 in 31 quintillion in the African American population.

24.     The Federal Bureau of Investigation's National Crime Information Center database shows that Jhaphre Higgs has been convicted of the following felony offenses:

a.   Aggravated Battery with a Deadly Weapon & Felon in

Possession of a Firearm, in Pinellas County, Florida, on or about

August 23, 2003 (Case # 02-15396);

b.   Possession of a Controlled Substance, in Pinellas County,

Florida, on or about October 21, 2014 (case # 14-18195);

c.   Fleeing & Eluding, in Pinellas County, Florida, on or about July

28, 2015 (case # 15-8423)

25.   On or about January 30, 2019, I queried the Florida Office of Executive

Clemency database to determine whether or not Higgs' right to possess firearms had

been restored. The query came back with negative results.

26.   Based upon the foregoing information, your affiant respectively submits

that there is probable cause to believe that the defendant, Jhaphre Higgs, violated 18

U.S.C. 922(g)(1).

Scott Boshek, Special Agent
Bureau of Alcohol, Tobacco, Firearms
& Explosives

Sworn and subscribed in my presence on
this ___ day of February 1, 2019.

THOMAS G. WILSON
United States Magistrate

6